UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 10-110-GWU


LISA MAYNARD,                                                        PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


**INTRODUCTION**

      Lisa Maynard brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits (DIB)

and for Supplemental Security Income (SSI).  The case is before the court on cross-

motions for summary judgment.

**APPLICABLE LAW**

      The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

  1.      Is the claimant currently engaged in substantial gainful activity?
          If so, the claimant is not disabled and the claim is denied.

  2.      If the claimant is not currently engaged in substantial gainful
          activity, does he have any "severe" impairment or combination
          of impairments--i.e., any impairments significantly limiting his
          physical or mental ability to do basic work activities?  If not, a
          finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Maynard, a 57-year-old former LPN with a high school education,[1] suffered from impairments related to degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease and obesity. (Tr. 19, 24). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted

---

[1]The ALJ stated in her findings that the vocational expert indicated that the plaintiff had no past relevant work. (Tr. 24). However, this statement was inaccurate. (Tr. 330).

range of medium level work.  (Tr. 20).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 24-25).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 25).

The time period pertinent to this appeal is important.  Maynard alleged a disability onset date of February 18, 2007 on her DIB application.  (Tr. 41).  The relevant time period for DIB consideration runs from this date through the May 21, 2009 date of the ALJ's denial decision.  With regard to SSI, the plaintiff filed her application on April 3, 2007 and, so, the relevant time period runs from this date to the May, 2009 date of the ALJ's denial decision.[2]

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Melissa Glannon included an exertional limitation to medium level work, restricted from a full range by: (1) an inability to stand or walk for more than six hours total in an eight-hour day; (2) an inability to sit for more than six hours total in an eight-hour day; and (3) a need to avoid exposure to vibration, fumes, odors, gases, dust and poor ventilation.

---

[2]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

(Tr. 330).  In response, the witness identified such jobs as linen clerk (65,000 national jobs), medium hand packer (104,000 national jobs), office clerk (164,000 jobs), and non-postal mail clerk (78,000 jobs).  (Id.).  The ALJ then added restrictions concerning a need to be able to learn the work in one or two steps with only routine changes in the work environment and no contact with the public.  (Tr. 331).  These restrictions would eliminate the office clerking positions previously cited by Glannon.  (Id.).  The witness added the job of medium assembler (155,000 national jobs). (Id.). Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Maynard's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Rita Ratliff examined the plaintiff and noted a history of chronic obstructive pulmonary disease, back pain, kidney stones and hypertension.  (Tr. 210).  Dr. Ratliff indicated that the claimant would not be impaired with regard to stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling.  (Id.).  This opinion was not contradicted by another treating or examining source and, so, provides strong support for the administrative denial decision.

Dr. Sudhideb Mukherjee (Tr. 187) and Dr. David Swan (Tr. 243) each reviewed the record and opined that Maynard did not suffer from a "severe" physical impairment.  The ALJ's findings were compatible with these opinions.

Dr. Abbe Cassity was the only other physician of record to examine Maynard during the relevant time period.  Dr. Cassity's treatment records from August, 2008 reveal that a hepatobiliary scan showed a normal gallbladder ejection fraction.  (Tr. 255).  More severe physical restrictions than those found by the ALJ were not imposed.  (Tr. 250-256).  Therefore, this opinion also supports the administrative decision.

The ALJ found that Maynard's mental problems did not constitute a "severe" impairment.  (Tr. 20).  The undersigned finds no reversible error with the ALJ's handling of the evidence of record relating to the plaintiff's mental condition.

Psychologist Stuart Cooke examined Maynard and diagnosed a depressive disorder.  (Tr. 206).  The claimant's Global Assessment of Functioning (GAF) was rated at 65.  (Id.).  Such a GAF suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Cooke opined that the plaintiff would have a "fair" ability to maintain attention to perform simple, repetitive tasks and to tolerate stress and work pressures.  (Tr. 207).  Even though the ALJ did not find that the claimant's mental problems were "severe," she

did include mental limitations in the alternative hypothetical question which were compatible with those of Cooke.    (Tr. 331).  Since a significant number of jobs could still be performed, any error in failing to find that the plaintiff suffered from a severe mental impairment would be harmless.  Therefore, this opinion does not support Maynard's disability claim.  Psychologists Laura Cutler (Tr. 189) and Jane Brake (Tr. 216) each reviewed the record and opined that it did not reveal the existence of a "severe" mental impairment.  The ALJ's findings were consistent with these opinions.

Maynard argues that the ALJ erred by failing to consider all of the evidence presented as required by 20 C.F.R. § 404.1520(a)(3).  The plaintiff notes that the ALJ left the record open after the hearing in order for her to obtain medical records from Dr. Angela Lewis, a treating source.  (Tr. 332).  These records were obtained and submitted after the hearing as Exhibit 25F.  (Tr. 271-302).  However, the ALJ failed to mention this evidence in her denial decision.  (Tr. 17-25).  The claimant asserts that this omission indicates that the ALJ failed to consider this evidence, prejudicing her rights under the administrative regulations.  The court does not agree with Maynard's argument.

The defendant notes that the ALJ indicated that she had considered all the evidence before her.  (Tr. 17, 24).  The defendant asserts that the ALJ was not required to mention each and every piece of evidence in the record, only fairly

develop the record.  Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993).  In giving the plaintiff time to obtain the records of Dr. Lewis, the ALJ was attempting to fairly develop the record.

The records from Dr. Lewis were dated between May of 2000 and June of 2005.  (Tr. 271-302).  This was well before the claimant's alleged onset date of February 18, 2007 and during a time period when she was still employed as an LPN. (Tr. 113, 318).  Thus, this exhibit was of limited relevance to Maynard's condition during the pertinent time frame and provides information primarily of her medical history.

The defendant also notes that Dr. Lewis did not submit an opinion with regard to Maynard's ability to engage in work-related activities which was contrary to the ALJ's findings and, so, this report does not support her disability claim.  The Sixth Circuit Court of Appeals has found that a report from a treating physician containing only medical history from a time period before the alleged onset date would not outweigh the opinion of a doctor who actually examined the claimant during the relevant time frame.  Heston v. Commissioner of Security, 245 F.3d 528, 536 (6th Cir. 2001).  In Heston, while the court thought that the ALJ should at least have mentioned the report, any error was harmless.  Id.

The undersigned notes that Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004), requires an ALJ to cite good reasons why the opinion

of a treating source was rejected.  However, in this action, Dr. Lewis did not provide an opinion which the AL rejected and, so, no violation occurred.

Finally, Maynard notes that these records contain objective evidence of back pain such as decreased deep tendon reflexes in the left lower extremity and a report of a need for a referral to a neurosurgeon.  (Tr. 289-290, 294).  Nevertheless, specific functional restrictions were not imposed and she continued to pursue employment until February, 2007.  Therefore, the court rejects the plaintiff's argument with regard to the treatment notes of Dr. Lewis.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 22nd day of June, 2011.


Signed By:

G. Wix Unthank

United States Senior Judge